**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FITRIYANTI, individually and as Personal
Representative of the Estate of NIKKY
BAGUS SANTOSO, deceased, and as natural
mother and next friend of RAFASYA FIQY
RAMAZAN, RASHYA FIQY
DAFANDRYAN,
and RAQHASYA FIQY KHAFIZAN, minors,

        Plaintiffs,

v.

PODHURST ORSECK, P.A., a Florida
professional association, and STEVEN C.
MARKS, individually,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 26-cv-6851

JURY TRIAL DEMANDED

**COMPLAINT FOR LEGAL MALPRACTICE AND ACCOUNTING**

Plaintiff Fitriyanti, individually and as Personal Representative of the Estate of Nikky

Bagus Santoso, deceased, and as the natural mother and next friend of her minor children Rafasya

Fiqy Ramazan, Rashya Fiqy Dafandryan, and Raqhasya Fiqy Khafizan (together, "Plaintiffs"), by

her undersigned counsel, brings this Complaint for Legal Malpractice and an Accounting against

Defendants Podhurst Orseck, P.A. ("Podhurst" or the "Firm") and Steven C. Marks ("Marks")

(together, "Defendants"), and in support thereof, states as follows:

**NATURE OF THE CASE**

1.      This action arises from Defendants' failed representation of Plaintiffs in the

wrongful death and related claims of Plaintiffs' husband and father, Nikky Bagus Santoso, who

was killed in the crash of Lion Air Flight JT 610 on October 29, 2018. Plaintiffs retained

Defendants in December 2018 to pursue all claims arising from that crash, including the civil

action filed in this District against The Boeing Company and claims to participate in the criminal restitution proceedings prosecuted by the United States Department of Justice.

2.      Defendants owed Plaintiffs the duties of a fiduciary and the duties of reasonably careful attorneys, including the duty to communicate, account for client funds, secure informed consent to fees and settlement, and supervise non-lawyer agents who handled client money. Defendants breached each of those duties. They settled the underlying claims without ever disclosing the total settlement to Plaintiffs, never produced the settlement agreement, release, or any written accounting, and never accounted for the legal fees or costs deducted. Defendants permitted their Indonesian agent, Ivan Henry, to act as their conduit to Plaintiffs and to retain a substantial portion of Plaintiffs' settlement money for years.

3.      Plaintiffs were told the Boeing civil settlement "should have been" approximately $4,000,000. To date, Plaintiffs have received approximately $1,013,000 against that civil settlement. Separately, Plaintiffs received approximately $1,013,000 distributed from the DOJ Restitution arising from Boeing's Deferred Prosecution Agreement—a wholly distinct fund that is not part of the $4,000,000 civil settlement figure. At least approximately $2,987,000 of the civil settlement proceeds has not been accounted for, and an additional Indonesian Rupiah 1,000,000,000 remains in Ivan Henry's hands and has been withheld from Plaintiffs since 2022.

4.      Plaintiffs did not learn of the missing funds, the unaccounted-for deductions, or Defendants' related failures until early February 2026, when other surviving families of Lion Air Flight JT 610 told Fitriyanti that the figures she had been given did not match what the other families had been told about their own settlements. Plaintiffs discharged Defendants on February 11, 2026.

5.      In Count I, Plaintiffs bring a claim for legal malpractice. As a direct and proximate result of Defendants' negligence, Plaintiffs have been deprived of a substantial portion of the settlement proceeds and restitution to which they were entitled and suffer ongoing financial harm from the malpractice alleged herein. In Count II, Plaintiffs seek an accounting of all information and transactions concerning their civil settlement and the DOJ Restitution which Defendants have refused to provide.

**PARTIES**

6.      Plaintiff Fitriyanti is a citizen of the Republic of Indonesia. She resides in Mentok, Bangka Barat, Bangka Belitung Province, Indonesia. She is identified on her Indonesian national identification card (Kartu Tanda Penduduk) by the single legal name "Fitriyanti". She is the widow of Nikky Bagus Santoso, deceased, and the duly recognized personal representative and heir of his estate under the laws of Indonesia.

7.      Fitriyanti brings this action in three capacities: (a) individually, as the surviving spouse of the decedent; (b) as Personal Representative of the Estate of Nikky Bagus Santoso, deceased; and (c) as natural mother and next friend of her three minor children, the heirs of the decedent, Rafasya Fiqy Ramazan (born August 22, 2010), Rashya Fiqy Dafandryan (born April 16, 2014), and Raqhasya Fiqy Khafizan (born January 26, 2018), all of whom are citizens of the Republic of Indonesia residing in Mentok, Bangka Barat, Indonesia.

8.      The decedent, Nikky Bagus Santoso, was at the time of his death a citizen of the Republic of Indonesia, domiciled in Mentok, Bangka Barat, Indonesia.

9.      Defendant Podhurst Orseck, P.A. is a professional association organized and existing under the laws of the State of Florida, with its principal place of business in Coral Gables, Miami-Dade County, Florida. Podhurst is a citizen of the State of Florida for purposes of diversity

3

jurisdiction. At all times relevant to this Complaint, Podhurst held itself out as a national aviation and complex litigation firm and accepted engagements to litigate aviation wrongful-death claims in this District, including the claims arising from the crash of Lion Air Flight JT 610.

10. Defendant Steven C. Marks is an attorney licensed to practice law in the State of Florida and a shareholder of Podhurst. On information and belief, Marks is a citizen of the State of Florida, domiciled in Miami-Dade County, Florida. Marks was the Podhurst attorney who personally accepted Plaintiffs' engagement, was identified to Plaintiffs as the lawyer who would represent them and was at all relevant times the attorney in charge of the representation. The acts and omissions complained of herein were committed by Marks personally, by other attorneys and staff of Podhurst acting under his direction and supervision, and by the Firm's non-lawyer agents, including Ivan Henry, retained, supervised, and held out to Plaintiffs by Marks and by the Firm as Podhurst's local representative in Indonesia. Marks acted at all relevant times within the course and scope of his employment, agency, and shareholding at Podhurst, and therefore Podhurst is liable for his acts and omissions.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2), because this action is between citizens of a foreign state, on the one hand, and citizens of a State of the United States, on the other, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. All Plaintiffs are citizens and subjects of the Republic of Indonesia. Defendant Podhurst is a citizen of the State of Florida. Defendant Marks is a citizen of the State of Florida. No Plaintiff is a citizen or subject of the same foreign state as any other party, and no Defendant is a citizen of a foreign state. Complete diversity exists between Plaintiffs and Defendants.

12. This Court has personal jurisdiction over Defendants. Defendants purposefully directed their professional conduct to this District by accepting Plaintiffs' retainer to pursue claims arising from the crash of Lion Air Flight JT 610, by appearing for and litigating those claims in this District in the consolidated action captioned In re Lion Air Flight JT 610 Crash, No. 1:18-cv-07686 (N.D. Ill.) (MDL No. 2916), before the Honorable Thomas M. Durkin, and by negotiating and consummating the settlement that is at the heart of this action while appearing of record in this District. Marks personally appeared and litigated in this District in connection with the underlying matter. Defendants have continuously and systematically transacted business in this District in connection with the underlying matter.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred in this District. Defendants' representation of Plaintiffs in the underlying action, the filing and prosecution of that action, and the settlement of that action all took place in this District. Venue is further proper under 28 U.S.C. § 1391(b)(3).

## FACTUAL ALLEGATIONS

### A. The Crash of Lion Air Flight JT 610

14. On October 29, 2018, Lion Air Flight JT 610, a Boeing 737 MAX 8, crashed into the Java Sea shortly after takeoff from Soekarno-Hatta International Airport in Jakarta, Indonesia. All 189 passengers and crew aboard, including Nikky Bagus Santoso, were killed.

15. Wrongful-death claims arising from the crash were filed against The Boeing Company in this District and consolidated before the Honorable Thomas M. Durkin in the action captioned *In re Lion Air Flight JT 610 Crash*, No. 1:18-cv-07686 (N.D. Ill.) (MDL No. 2916) (the "Underlying Action").

5

16.     On January 7, 2021, The Boeing Company entered into a Deferred Prosecution Agreement with the United States Department of Justice, *United States v. The Boeing Company*, No. 4:21-cr-00005 (N.D. Tex.), which included a victim compensation component for the families of the passengers and crew killed aboard Lion Air Flight JT 610 and the subsequent crash of Ethiopian Airlines Flight 302 (the "DOJ Restitution").

**B. Plaintiffs Retain Defendants**

17.     In or about December 2018, Fitriyanti retained Defendants to represent her and her three minor children in connection with all claims arising from the death of her husband, including civil claims against The Boeing Company and claims to participate in the DOJ Restitution. Marks personally accepted the engagement on behalf of the Firm and was identified to Plaintiffs as the lawyer in charge of their representation.

18.     Fitriyanti signed a written retainer agreement with the Firm. She was also orally told the Firm's contingent fee would be "approximately" thirty-five percent (35%) of any recovery. She was never told the exact percentage, was never told how fees would be split between Podhurst and any Indonesian agent and was never provided with a copy of the written fee agreement after she signed it. To date, Plaintiffs do not have a copy of the engagement letter or fee agreement, despite having requested it.

19.     From the outset of the engagement, Defendants used a non-attorney, Ivan Henry, to communicate with Plaintiffs in Indonesia. Defendants presented Ivan Henry to Plaintiffs as the Firm's local representative and required Plaintiffs to channel their communications through him. Ivan Henry obtained documents from Plaintiffs, communicated settlement information to Plaintiffs, and was the person through whom Plaintiffs' funds were ultimately routed in Indonesia.

**C. The Settlement and Restitution**

20.     On information and belief, in or about December 2019, Defendants settled Plaintiffs' claims in the Underlying Action against The Boeing Company. Defendants informed Fitriyanti, through Ivan Henry, that her "case had settled," but never disclosed to her the total settlement amount, never produced the settlement agreement or release, and never produced any closing statement, distribution sheet, or accounting setting out the gross settlement, attorneys' fees, costs, or the client's net recovery. Defendants have never produced those documents in the years since, even when requested to do so. On those occasions when Fitriyanti was permitted to look at some documents, she was not allowed to keep copies or to photograph the documents.

21.     Through Ivan Henry, Plaintiffs were told that forty percent (40%) of any future payments due to Fitriyanti was to be paid to her mother-in-law. That statement was false. There was no lawful basis for any such deduction from Plaintiffs' recovery. Plaintiffs were also told, through Ivan Henry, that because Fitriyanti had remarried, the amount of her settlement was reduced. That statement was likewise false. Defendants knew or should have known these statements were false and failed to correct them.

22.     On information and belief, the gross Boeing civil settlement paid on account of the death of Nikky Bagus Santoso should have been approximately $4,000,000. The only amounts ever paid to Plaintiffs from that civil settlement were approximately $1,013,000 (United States dollars), equivalent to approximately 17 billion Indonesian Rupiah. Separately, and arising from an entirely distinct fund under Boeing's Deferred Prosecution Agreement with the United States Department of Justice, a further approximately $1,013,000 was distributed to Plaintiffs from the DOJ Restitution. The DOJ Restitution payment is not part of, and should not be grouped with, the $4,000,000 civil settlement figure.

23.     At least approximately $2,987,000 of the civil settlement funds to which Plaintiffs were entitled has not been accounted for by Defendants. In addition, Ivan Henry, acting as Defendants' local representative and agent has retained and continues to retain settlement funds belonging to Plaintiffs in the amount of at least Indonesian Rupiah 1,000,000,000 since approximately 2022. Defendants' agent Ivan Henry told Fitriyanti that he would release the funds shortly. Henry has not. Defendants have not caused the funds to be released, have not supervised or audited Ivan Henry, and have not provided Plaintiffs with an accounting.

### D. Discovery and Discharge

24.     Until in or about February 2026, Fitriyanti believed that the figures her lawyers had communicated to her, through Ivan Henry, were complete and accurate. She trusted her lawyers and relied on them to provide accurate information over which they had exclusive control and had no reason to question them. In February 2026, she spoke with other surviving families of Lion Air Flight JT 610 victims and learned, for the first time, that the figures she had been given did not match what other families had been told. That conversation was the first time Plaintiffs had information suggesting that their case had been settled and disbursed on terms different from what they had been led to believe.

25.     On February 11, 2026, Plaintiffs, in writing, discharged Podhurst and Marks as their counsel and instructed Defendants to cease all further contact except through their new counsel. On the same date, Plaintiffs separately, in writing, discharged Ivan Henry and demanded that he cease further contact and account for the funds he had retained. Neither Defendants nor Ivan Henry has, to date, produced a true and complete settlement agreement, release, closing statement, accounting, or remittance of the funds owed.

26. This action is timely filed within any applicable statute of limitations, including without limitation the two-year limitations period and six-year statute of repose set forth at 735 ILCS 5/13-214.3. Defendants' negligent acts and omissions, including their continuing failures to account, to disclose the settlement, to supervise Ivan Henry, and to remit the funds to which Plaintiffs are entitled, have continued uninterrupted from at least 2019 through the date of this Complaint, and Defendants further fraudulently concealed those acts and omissions from Plaintiffs, tolling any applicable repose period.

## COUNT I

### LEGAL MALPRACTICE
**(Against Podhurst Orseck, P.A. and Steven C. Marks)**

27. Plaintiffs reallege and incorporate by reference paragraphs 1 through 26 above as if fully set forth herein.

28. Under Illinois law, the elements of a legal malpractice claim are: "(1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that but for the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) actual damages." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 225-26 (2006).

29. At all times material to this Complaint, an attorney-client relationship existed between Plaintiffs, on the one hand, and Defendants, on the other. Plaintiffs signed a written retainer agreement with the Firm in December 2018. Marks personally accepted the engagement and held himself out as the lawyer in charge of the representation. Defendants appeared as Plaintiffs' counsel of record in the Underlying Action and held themselves out as Plaintiffs' lawyers in the DOJ Restitution. Defendants owed Plaintiffs the fiduciary duties of an attorney to a client and the duty to exercise the skill, care, judgment, and diligence ordinarily exercised by

reasonably careful attorneys representing the survivors of a foreign-national passenger in a major aviation wrongful-death matter pending in this District.

30. Defendants' duties to Plaintiffs included, without limitation, (a) the duty to communicate with the client and to keep the client reasonably informed about the status of the matter, including the existence, terms, and amount of any settlement offer or settlement; (b) the duty to obtain the client's informed consent to any settlement; (c) the duty to deliver to the client a written closing statement or accounting at the conclusion of any contingent-fee matter, identifying the gross settlement, the attorneys' fees, the costs and expenses deducted, and the client's net recovery; (d) the duty to safeguard client funds, hold them separate from the Firm's own property, promptly notify the client of the receipt of any client funds, and promptly deliver to the client all funds the client is entitled to receive; (e) the duty to render a full accounting of client funds upon request; (f) the duty to supervise non-lawyer assistants, agents, and contractors and to ensure their conduct is compatible with Defendants' professional obligations; and (g) the duty not to make, and if made, to correct, any material misrepresentation to the client, including misrepresentations communicated through Defendants' agents.

31. Defendants negligently breached each of these duties. Specifically, Defendants, by and through Marks personally, other Podhurst attorneys and staff acting under his direction and supervision, and their agent Ivan Henry: (a) settled the Underlying Action without ever disclosing the total settlement amount to Plaintiffs; (b) failed to obtain Plaintiffs' informed consent to the terms of the settlement; (c) failed to deliver, and to date have refused to deliver, a written settlement statement, closing statement, distribution sheet, or accounting of any kind setting out the gross settlement, the fees and costs deducted, and the client's net recovery; (d) failed to deliver to Plaintiffs the executed settlement agreement, release, or any other documentation of the settlement;

(e) failed to safeguard Plaintiffs' settlement funds and to ensure their prompt delivery to Plaintiffs; (f) failed to render a full and accurate accounting of client funds when Fitriyanti sought to review her file and requested access to her documents; (g) failed to supervise Ivan Henry and permitted him to retain Plaintiffs' settlement funds for years; (h) communicated, and failed to correct, materially false statements to Plaintiffs that forty percent of future payments would be paid to Plaintiffs' mother-in-law and that Fitriyanti's settlement had been reduced because she remarried; and (i) failed to maintain even minimal records of the client relationship sufficient to allow Plaintiffs, on request, to confirm the basic economics of their own case.

32. Each of these breaches falls below the standard of care of reasonably careful attorneys representing the survivors of a foreign-national passenger in a major aviation wrongful-death matter. No reasonably careful attorney handling such a matter for a foreign client (a) settles the case without disclosing the gross settlement; (b) fails to provide a written closing statement at the conclusion of a contingent fee matter; (c) permits a non-lawyer agent abroad to hold client settlement funds for years; or (d) allows demonstrably false statements about reductions in the client's share of the settlement to stand uncorrected; and (e) fails to properly supervise non-lawyer agents of the lawyer.

33. Defendants' breaches were the direct and proximate cause of the injuries Plaintiffs have suffered. But for Defendants' negligence, Plaintiffs would have received the full settlement and restitution to which they were entitled in the Underlying Action, would have received a complete accounting of all amounts paid by The Boeing Company and by the DOJ Restitution on account of the death of Nikky Bagus Santoso, would not have been the victims of false statements about fictitious deductions, and would not have been deprived for years of the use of funds held

by Defendants' Indonesian agent. Had Defendants performed even the most basic duties of communication, accounting, and supervision, none of those harms would have occurred.

34.    Marks is personally liable for his own negligent acts and omissions as the attorney in charge of the representation. Podhurst is liable for Marks's acts and omissions under the doctrine of respondeat superior and as a matter of professional-association law, and Podhurst is independently liable for its own negligent acts and omissions, including its negligent retention, supervision, and use of Ivan Henry as its local representative.

35.    As a direct and proximate result of Defendants' breaches, Plaintiffs have sustained actual damages, including, without limitation, (a) the difference between the gross Boeing civil settlement to which Plaintiffs were entitled and the amounts in fact paid to Plaintiffs from that civil settlement, which on information and belief is no less than approximately $2,987,000; (b) the funds in the amount of at least Indonesian Rupiah 1,000,000,000 retained by Defendants' agent Ivan Henry since approximately 2022; (c) prejudgment interest on those amounts; (d) the legal fees and costs paid to or retained by Defendants, which should be disgorged; and (e) such other and further damages as the evidence at trial shall show.

WHEREFORE, Plaintiffs Fitriyanti, individually and as Personal Representative of the Estate of Nikky Bagus Santoso, deceased, and as natural mother and next friend of Rafasya Fiqy Ramazan, Rashya Fiqy Dafandryan, and Raqhasya Fiqy Khafizan, minors, respectfully request that this Court enter judgment in their favor and against Defendants Podhurst Orseck, P.A. and Steven C. Marks, jointly and severally, and award the following relief: (a) compensatory damages in an amount to be proven at trial, but in any event in excess of $75,000 and on information and belief no less than approximately $2,987,000 from the Boeing civil settlement, plus the United States dollar equivalent of Indonesian Rupiah 1,000,000,000; (b) disgorgement and forfeiture of

all attorneys' fees, costs, and expenses paid to or retained by Defendants on account of the Underlying Action and the DOJ Restitution, together with the imposition of a constructive trust on such fees; (c) prejudgment and post-judgment interest at the maximum rate permitted by law; (d) costs of suit; and (e) such other and further relief as this Court deems just and proper.

## COUNT II

### EQUITABLE ACCOUNTING.
### (Against Podhurst Orseck, P.A. and Steven C. Marks)

36.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 35 above as if fully set forth in this Count.

37.     Illinois recognizes a cause of action in equity for an accounting. To state a claim for an equitable accounting, the complaint must establish two elements: first, that there is no adequate remedy at law; and second, at least one of the following: a breach of a fiduciary relationship between the parties, a need for discovery, fraud, or the existence of mutual accounts that are of a complex nature.

38.     Defendants owed Plaintiffs fiduciary duties as their attorneys. The attorney-client relationship is, by its nature, a fiduciary one. An attorney who receives client funds owes the client a continuing fiduciary duty to safeguard those funds, to keep them separate from the lawyer's own property, to promptly notify the client of their receipt, to promptly deliver to the client all funds the client is entitled to receive, and, upon request, to render a full and complete accounting of the funds. The Illinois Rules of Professional Conduct codify these fiduciary obligations. See Ill. R. Prof'l Conduct R. 1.15. The duty survives the termination of the representation. Because the accounting Plaintiffs seek is based on a breach of fiduciary duty, the requirement of no adequate remedy at law is satisfied as a matter of law.

13

39. Defendants breached their fiduciary duty to account. As alleged above, Defendants received settlement funds and DOJ Restitution funds belonging to Plaintiffs, deducted attorneys' fees, costs, and other amounts from those funds, routed the remaining funds through their Indonesian agent Ivan Henry, and have never since the settlement of the Underlying Action, produced to Plaintiffs a single document showing the gross amount received on Plaintiffs' behalf, the amount deducted as attorneys' fees, the amount deducted as costs or expenses, the amount paid or owed to any Indonesian agent (including Ivan Henry), the dates of those receipts and deductions, or the net amount actually due to Plaintiffs. The information necessary to compute Plaintiffs' recovery is uniquely within Defendants' possession and control.

40. Plaintiffs have a clear and pressing need for discovery of these accounts. Plaintiffs do not possess, and have never been given, a copy of the executed settlement agreement, the release, the closing statement, the distribution sheet, the wire-transfer records, the trust-account ledger, or any other documentation of the receipt and disbursement of their settlement funds. Plaintiffs were not permitted to keep copies of, or even to photograph, the few documents they were shown. Plaintiffs requested access to records of the receipt and disbursement of their settlement funds and that access was denied. The records Defendants permitted Plaintiffs to view were inadequate to allow Plaintiffs to determine the gross settlement, the deductions, or the net amount due. Without an accounting from Defendants, Plaintiffs cannot determine how much money was paid by The Boeing Company on their behalf, how much was paid by the DOJ Restitution on their behalf, how much was deducted by Defendants as fees and costs, how much was deducted by Ivan Henry, how much remains in any account controlled directly or indirectly by Defendants, and whether the amounts paid to Plaintiffs reflect Plaintiffs' full and lawful share of the recovery. See *Chicago City Bank & Trust Co. v. Lesman*, 186 Ill. App. 3d 697 (1st Dist.

1989) (an accounting complaint should plead that the party requested and was denied access to relevant records or that those records were inadequate, that a demand for accounting was made and refused, and that there is wrongdoing or impropriety beyond the mere failure to voluntarily provide an accounting).

41.     Plaintiffs made a demand for an accounting and that demand was refused. On February 11, 2026, Plaintiffs, in writing, discharged Defendants and demanded that Defendants produce the settlement agreement, the release, a written closing statement, a full accounting of the funds received and disbursed, and a remittance of any funds owed. Defendants have not produced any of those documents and have not paid the funds owed.

42.     There has been wrongdoing or impropriety beyond the mere failure to voluntarily account. Through Ivan Henry, acting as Defendants' agent and representative, Plaintiffs were told falsely that forty percent (40%) of any future payments due to Fitriyanti was to be paid to her mother-in-law, and that Fitriyanti's settlement amount was reduced because she had remarried. Neither statement was true. There was no lawful basis for any such deduction or reduction. Defendants knew or in the exercise of reasonable care should have known that these statements were false and failed to correct them. No information or records have been provided to Plaintiffs regarding the wrongful payment. The settlement of the Underlying Action and the disbursement of Plaintiffs' funds occurred under cover of those false statements and under cover of Defendants' refusal to provide Plaintiffs with any written documentation of the settlement. These circumstances are precisely the kind of fraud and wrongdoing that justify equitable relief and an accounting in equity.

43.     The accounts at issue are of a complex nature. The funds at issue were generated by multiple sources, including the settlement of the Underlying Action against The Boeing

15

Company and the separate DOJ Restitution prosecuted in the United States District Court for the Northern District of Texas. The funds passed through multiple intermediaries, including Defendants' trust account, the Firm's general account, and one or more accounts controlled by Ivan Henry in Indonesia. Funds were transferred between United States dollars and Indonesian Rupiah at exchange rates that have varied materially over time. Deductions for fees, costs, taxes, currency conversion, and other items must be reconciled against the gross recovery. The reconstruction of these accounts requires documentary records and the cooperation of Defendants, and is a task to which equity is uniquely suited.

44. Even setting aside the fiduciary-duty exception to the requirement, Plaintiffs have no adequate remedy at law. Plaintiffs cannot calculate the precise amount of their damages without the documentary records that are exclusively in Defendants' possession and control. The records of the gross settlement, the DOJ Restitution distributions, the Firm's fee and cost deductions, and the amounts transferred to and held by Ivan Henry are the indispensable predicate for any computation of damages. Plaintiffs are not required to plead or prove the precise amount due at this stage; that is data peculiarly within Defendants' knowledge, and pleading it is not the office of a complaint seeking an accounting. Damages at law are incapable of being fixed without an accounting in equity, and an accounting is necessary to do complete justice between the parties.

45. Plaintiffs are therefore entitled to an order requiring Defendants to render a full, true, and complete accounting of all sums received by Defendants from The Boeing Company, the United States Department of Justice, or any other source on account of the death of Nikky Bagus Santoso and the Underlying Action; all deductions made from those sums, identified by recipient, date, and purpose, including attorneys' fees, costs, taxes, currency-conversion charges, and any payments to or compensation of Ivan Henry; all funds paid by Defendants to or for the benefit of

16

Plaintiffs, identified by amount, date, and method of payment; all funds currently held by Defendants or by Ivan Henry on account of Plaintiffs; and all communications between Defendants and Ivan Henry relating to the receipt, deduction, or disbursement of Plaintiffs' funds. Plaintiffs are further entitled to the imposition of a constructive trust on all funds shown by the accounting to be due to Plaintiffs and to the disgorgement of all amounts retained by Defendants without right.

Wherefore, Plaintiffs Fitriyanti, individually and as Personal Representative of the Estate of Nikky Bagus Santoso, deceased, and as natural mother and next friend of Rafasya Fiqy Ramazan, Rashya Fiqy Dafandryan, and Raqhasya Fiqy Khafizan, minors, respectfully request that this Court enter judgment in their favor and against Defendants Podhurst Orseck, P.A. and Steven C. Marks, jointly and severally, on Count II of this Complaint, and award the following relief: first, an order requiring Defendants, within a time fixed by the Court, to render a full, true, and complete accounting of all funds received, deducted, disbursed, and retained on account of Plaintiffs' claims in the Underlying Action and the DOJ Restitution, in the manner set forth in paragraph 45 above; second, the imposition of a constructive trust on all funds shown by the accounting to be due to Plaintiffs; third, an order requiring Defendants to disgorge to Plaintiffs all funds retained by Defendants or by their agent Ivan Henry without right; fourth, a money judgment in the amount shown by the accounting to be due and owing to Plaintiffs; fifth, prejudgment and post-judgment interest at the maximum rate permitted by law; sixth, costs of suit; and seventh, such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiffs demand trial by jury on all claims and issues so triable.

> FITRIYANTI, individually and as Personal Representative of the Estate of NIKKY BAGUS SANTOSO, deceased, and as natural mother and next friend of RAFASYA FIQY

17

RAMAZAN, RASHYA FIQY DAFANDRYAN,
and RAQHASYA FIQY KHAFIZAN, minors

By:     Peter S. Lubin
         One of her attorneys

Peter S. Lubin
James V. DiTommaso
DiTommaso Lubin, P.C.
17W220 22nd Street, Suite 410
Oakbrook Terrace, Illinois 60181
(630) 333-0333
peter@d-l.law
james@d-l.law

Adrian Vuckovich
Collins Bargione & Vuckovich
One North LaSalle Street, #300
Chicago, IL 60602
(312) 372-7813
av@cb-law.com

Dated: June 9, 2026.